This is a suit in which the father of an eight-year-old boy, Hugh de la Vergne St. Paul, seeks to recover on behalf of his minor son the sum of $7500 as damages for physical injuries sustained by his son when, on March 28, 1938, the bicycle on which he was riding, collided with an automobile driven by John Lanius, also a minor, sixteen years of age, for whose negligence it is claimed the defendant, Thomas H. Britain, is liable. It is alleged that, at the time of the accident, John Lanius was returning certain books which had been borrowed from the Public Library by Mrs. Britain and, therefore, it is contended, that he was on a community errand when the accident occurred with consequent liability in Britain as head of the community.
The defendant denies that John Lanius was returning any books for his wife and disclaims any responsibility for his alleged negligence.
There was judgment below in defendant's favor and plaintiff has appealed.
Before considering the question of the negligence of John Lanius, the driver of defendant's automobile, we should determine whether Britain was responsible for his acts of omission or commission at the time of the accident.
Defendant directs our attention to the case of Adams v. Golson,187 La. 363, 174 So. 876, 878, where it was held that Mrs. Golson was not acting for the community when she was driving her husband's automobile "to attend a style show and thereafter remained in town to attend a regular meeting of a fraternal organization of which she was an officer. Just prior to the accident, she had driven a friend with whom she attended the style show to her home and, at the moment of the accident, she was on her way to a restaurant on Third street in the city of Baton Rouge to partake of her evening meal before attending the meeting which was scheduled to begin at 7:30 o'clock p.m. of the same day."
The court was of the opinion:
"* * * That in order to hold the husband liable as head and master of the community for torts committed by his wife within the meaning and contemplation of *Page 597 
the provisions of article 2986 of the Revised Civil Code, it would have to be shown affirmatively that she was expressly or impliedly authorized to and was, at the time of the commission of the act, actually attending to the affairs or business of the community."
The court further said:
"No sound and logical reason has been suggested by counsel, and we can think of none, why a man should be held liable for the torts committed by his wife while using his automobile for her own pleasure any more than he could be held liable if the tort had been committed by a third person while using the car for his own purposes or pleasure, with the owner's consent."
It is the contention of counsel that the Golson case cannot be distinguished from the case at bar and that, if Mrs. Golson's mission was no concern of the community when using her husband's automobile for her own pleasure, Mrs. Britain could not be said to have employed her husband's automobile in the interest of the community by sending it, in charge of young John Lanius, to the Library in order to return some books which she is alleged to have borrowed. In other words, no distinction can be made between a wife's pleasure and her instruction or entertainment.
Counsel for plaintiff attempt to differentiate the Golson case and contend that it has no application here for several reasons which we need not discuss. In passing, we might say, that the dictinction, if any exists, is a very narrow one. However, the facts upon which plaintiff relies to establish the liability of the community have not been proven. In other words, there is insufficient proof to sustain the contention that Lanius, at the time of the accident, was returning books to the Library for Mrs. Britain.
Lanius, a sixteen-year-old boy, whose home was in the City of Baton Rouge, was a fourth cousin of Mrs. Britain. He was afflicted with a stomach ailment and, at the time of the accident, was residing with Mr. and Mrs. Britain in order that he might receive treatment by a stomach specialist in New Orleans. While in New Orleans he attended Fortier High School. In connection with his studies in the High School, he was required from time to time to review certain books and, in order to obtain these books, he secured a card from the New Orleans Public Library which was issued in his name. He testified that the books which he was returning on the day of the accident were three relating to English and one concerning History.
Miss Bulger, his English Teacher, corroborated his statement concerning the necessity for obtaining and reporting on certain books.
Mrs. Britain testified that she did not have a card at the Library and, in fact, had never had one, and that for more than ten years she had not read a library book.
Mr. Britain did not know of his wife ever having borrowed any library books.
As against this evidence the plaintiff testified that when Mrs. Britain came to the Charity Hospital to see his son, she stated that Lanius was returning the books to the Library for her.
Miss Regina St. Paul, plaintiff's sister, testified that:
"I have a faint recollection of the boy being on a trip from or to the library. I do not know whether it was told to me or told to somebody else."
Miss Florence St. Paul, another sister of plaintiff, testified that Mrs. Britain "told me that she had sent the child to a library to return some books, and that this library was somewhere up in the neighborhood around Broadway or something." When asked whether she was certain that Mrs. Britain told her that she had sent the boy to the library, she answered: "Oh, no, whether she told me she had sent — anyway, he was returning the books to the library, and apparently she had sent him, from the way she spoke to me. She said, `He was on a message for her.' She might not have used those exact words, but she said he was on a message for her."
Under the circumstances, the evidence is not sufficient to establish a predicate upon which to contend for the liability of the community of which Mr. Britain was the head and master.
There is some contention to the effect that whether the boy was returning the books for his own account or not that the community would be liable because there was a penalty due if the books had not been delivered on the 28th of March, the day of the accident. We are not certain we understand this argument, but we are convinced that there is no law which would make Mr. Britain responsible for the negligence of Lanius because Lanius *Page 598 
might be subjected to a fine if the books were not returned on the day they were due, and this, regardless of whether Mr. Britain was paying all of Lanius' expenses while a guest in his home or otherwise.
It follows that the plaintiff's suit must fail, consequently, and
For the reasons assigned the judgment appealed from is affirmed.
Affirmed.